<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRCIT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| EILEEN NORDONE, | Civil Action No. 20-4313 (SDW) |
| Plaintiff, |  |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, |  |
| Defendant. | February 26, 2021 |

**WIGENTON**, District Judge.

Before the Court is Plaintiff Eileen Nordone's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Andrew Ayers' ("ALJ Ayers") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Ayers' factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

**I.    <u>PROCEDURAL AND FACTUAL HISTORY</u>**

**A.  Procedural History**

On July 15, 2016, Plaintiff filed a Title II application for DIB, alleging disability as of June

22, 2015, at age forty-two.  (Administrative Record ("R.") at 143.)  In her DIB application, Plaintiff alleged the following illnesses, injuries, or conditions: chronic nausea and fatigue, chronic stomach and bowel inflammation, anxiety, migratory arthritis, "mthfr gene mutation c677 and a1298," "liver enzyme fluctuate," "fibromyalgia symptoms," abdominal pain, and acid reflux.  (R. 56, 164.) The state agency denied Plaintiff's applications both initially and upon reconsideration.  (R. 55–76, 79–88.)  Upon Plaintiff's request, ALJ Ayers held an administrative hearing on November 13, 2018.  (R. 89–94, 30–53.)  On February 1, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled and therefore not entitled to disability benefits.  (R. 12–25.)  The Appeals Council denied Plaintiff's request for review on March 12, 2020, rendering the ALJ's decision the final decision of the Commissioner.  (R. 1–6.)  On judicial review, Plaintiff asks this Court to reverse the Commissioner's decision or remand it for a new hearing.  (D.E. 11 at 1.)

### B.  Factual History

Plaintiff is currently forty-six years old.  (*See* R. 143.)  She earned a master's degree in special education and worked as a special education teacher for twenty years from 1995 to 2015. (R. 37, 165.)  Plaintiff states that she stopped working on June 22, 2015, because of her alleged disability.  (R. 143, 164.)  In her function report, Plaintiff stated that she lives with her spouse and children.  (R. 177–78.)  She cares for her children, which includes monitoring their home schooling, preparing simple meals, and driving them to activities when she is able.  (R. 177.)  She states that she talks on the phone, folds laundry when not in pain, dusts in fifteen-minute intervals, shops for groceries and clothes, reads, and watches television all depending on her level of nausea. (R. 177–84.)  Plaintiff's spouse assists her with chores such as household repairs and vacuuming, financial management, and meal preparation.  (*Id.*)  The record contains notes from multiple doctors who treated or examined Plaintiff for physical and psychological impairments, beginning

in 2015.  The following is a summary of the evidence.

After stopping work in June 2015, Plaintiff saw Genoveva Coyle, M.D., for blood work and complaints of persistent nausea.  (R. 475–80.)  Dr. Coyle diagnosed Plaintiff with hypercholesterolemia, anemia, dyspepsia, and hypertension in August 2015.  (R. 480.)  Plaintiff visited Bonnie Cheng, M.D., in September 2015 for a second opinion regarding her nausea and abdominal pain, among other reasons.  (R. 351–52.)  Dr. Cheng opined that Plaintiff's computed tomography ("CT") scan and blood work revealed no abnormalities.  (*See id.*)  In October 2015, Dr. Cheng diagnosed Plaintiff with nausea, Gerd, abdominal pain, and irritable bowel syndrome. (R. 354–55, 365–66.)  Meanwhile, Dr. Coyle diagnosed Plaintiff with anxiety, hyperprolactinemia, Gerd, and "Eo" in November 2015.  (R. 495.)

Plaintiff subsequently underwent an esophageal manometry in January 2016, which revealed normal results.  (R. 386.)  In February and March 2016 Plaintiff noted that some of her symptoms improved.  (R. 372, 376.)  At this time, Dr. Coyle recommended Plaintiff follow a gluten-free diet.  (R. 503.)  Plaintiff's March 2016 abdominal sonogram showed mild fatty infiltration of the liver and a small liver cyst (R. 410), and a May 2016 upper endoscopy revealed mild gastritis and mild duodenitis.  (R. 378–79.)  In June 2016, Dr. Coyle diagnosed Plaintiff with gastroenteritis.  (R. 516.)

Plaintiff saw Marc Friedman, Ph.D., in March 2016 for a consultative examination.  (R. 345–57.)  Dr. Friedman noted that although Plaintiff was poorly dressed and groomed, she sustained conversation, maintained eye contact, had a sense of humor, and demonstrated average intellectual functioning.  (*Id.*)  Dr. Friedman opined that Plaintiff showed symptoms of anxiety disorder and major depressive disorder.  (*Id.*)

In December 2016, Plaintiff started treating with Joseph Wu, M.D.  (R. 549–50.)  Plaintiff's

diagnoses codes for this visit reflect inflammatory polyarthropathy, "elevated C-reactive protein" and fibromyalgia.  (R. 550.)  However, Dr. Wu's notes state that Plaintiff "likely has underlying fibromyalgia."  (*Id.*)  He prescribed Prednisone that would taper off over a twenty-day period. (*Id.*)  During a follow-up visit in January 2017, Plaintiff's symptoms improved with Prednisone, but they returned when she tapered off the medication; as a result, Dr. Wu advised that Plaintiff should consider restarting Prednisone pending consultation with her gastroenterologist, Dr. Cheng. (*See* R. 565–66.)  In addition, Plaintiff underwent a colonoscopy in January 2017, which revealed polyps (R. 388–89), and a capsule endoscopy from the same month showed small bowel ulcerations.  (R. 399.)  Following an esophageal motility study in February 2017, Dr. Cheng found the results inconsistent with irritable bowel disease.  (R. 688.)

Dr. Wu's February 2017 medical report indicates that Plaintiff had tenderness in her right wrist, right elbow, and right second and third fingers with mild swelling.  (R. 543.)  Plaintiff had normal range of motion in her shoulders, elbows, wrists, knees, hips, ankles, cervical spine, and lumbar spine.  (R. 546–47.)  Dr. Wu opined that Plaintiff may have difficulty with grasping, pulling, and fine finger control due to pain in her right wrist, but otherwise found Plaintiff had no limitations lifting, carrying, standing, walking, or sitting.  (R. 544.)  Dr. Wu noted "possible Crohn's which can cause arthritis," and diagnosed Plaintiff with "inflammatory arthritis of unclear etiology."  (R. 543–44.)  Dr. Wu's February 2017 medical report does not include a diagnosis of fibromyalgia.  (*See* R. 542–48.)

In March 2017, Plaintiff reported improved symptoms after restarting Prednisone.  (R. 603.)  An abdominal sonogram from the same month revealed no changes since Plaintiff's prior sonogram from March 2016.  (R. 689.)  Although Plaintiff was informed that she had inflammation in her intestine, Dr. Wu found no conclusive evidence of inflammatory bowel disease or Crohn's

disease. (R. 603–04.) Six months later, Plaintiff continued to complain of joint pain in her fingers; Dr. Wu noted "possible Crohn's," and reflected on his discussion with Dr. Cheng regarding Plaintiff's only evidence of inflammatory bowel disease consisting of nonspecific ulceration. (R. 613–14.)

Also in March 2017, a state agency physician, Arden Fusman, M.D., opined that Plaintiff can sit and stand for six hours each workday, push and pull, reach in any direction, and do the following occasionally: climb ramps, climb stairs, kneel, stoop, crawl, and crouch. (R. 72–73.) Dr. Fusman noted that Plaintiff has limited manipulation of her right hand and fingers and could not climb ladders, ropes, or scaffolds. (*Id.*) Although Dr. Fusman found that Plaintiff has mild gastritis, he found no medical evidence to support fibromyalgia. (R. 73.) Accordingly, Dr. Fusman concluded that Plaintiff could perform light work. (R. 74.) In the same month, Plaintiff saw Pamela D. Green, Ph.D., a state agency psychologist, who conducted a psychiatric review and opined that Plaintiff's impairments were not severe. (R. 70.)

In addition, Plaintiff saw Dr. Coyle for fatigue, difficulty sleeping and shortness of breath during exercise in March 2017. (R. 744.) Dr. Coyle's subjective notes indicated no "diaphoresis[], nausea nor vomiting" and her diagnoses consisted of fatigue, malaise, insomnia, viral syndrome, and "HH dysfunction." (R. 744–45.) In April 2017, Plaintiff saw a neurologist, Marcia A. Dover, M.D., to rule out multiple sclerosis after experiencing slurred speech and balance issues. (R. 606.) Dr. Dover opined that Plaintiff had a mild postural tremor, but otherwise her "neurologic examination [was] essentially normal," including her cognitive, sensory, reflexive, and motor functions. (R. 607–08.) Plaintiff's brain and cervical Magnetic Resonance Imaging ("MRI") from May 2017 ruled out multiple sclerosis and did not show demyelinating lesions but reflected a developmentally slender central canal which contributes to mild central canal stenosis. (R. 637–

39.)  Three months later, Plaintiff complained of balancing issues and Dr. Coyle diagnosed her with dizziness, balance issues, and neuropathy.  (R. 747–54.)  Plaintiff's sonogram from June 2017 revealed a mildly enlarged thyroid gland and Plaintiff underwent a left thyroid lobectomy in August of the same year.  (R. 703–04, 915–23.)

In September 2017, Plaintiff complained of nausea to Dr. Cheng, who diagnosed Plaintiff with "Crohn's disease of both small and large intestine," but simultaneously opined that her "symptoms *may* all be related to Crohn[']s [disease]." (R. 645–46 (emphasis added).)  Plaintiff subsequently received emergency room ("ER") care in October 2017 for dizziness, difficulty breathing, and lower back pain, and was diagnosed by an ER physician with a urinary tract infection and stroke.  (R. 817, 844.)  Thereafter, in November 2017, Dr. Coyle evaluated Plaintiff for lightheadedness and dizziness.  (R. 777.)  Dr. Coyle noted an abnormal CT scan from Plaintiff's ER visit and found that she continued to present with generalized weakness and malaise, as well as vertigo and anemia.  (R. 777–78.)

Plaintiff visited a neurologist, Yevgeniy L. Khesin, M.D., in March and September 2018. (R. 622.)  Dr. Khesin opined that Plaintiff's MRI from 2017 was normal and her electroencephalogram ("EEG") was also normal.  (*Id.*)  He advised Plaintiff to increase a current medication to help with depression and poor sleep; he also recommended a sleep study to rule out sleep apnea.  (*Id.*)

Dr. Cheng completed a Crohn's and Colitis Medical Source Statement on Plaintiff's behalf in March 2018, which indicated that Plaintiff had episodes of lower abdominal pain and altered bowels, although triggers were uncertain.  (R. 574.)  Dr. Cheng found that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, and that depression and anxiety affected Plaintiff's physical condition.  (R. 574–75.)  Dr. Cheng opined that Plaintiff

was capable of low stress work but could not assess her ability to sit, walk, stand, lift, carry, twist, stoop, crouch, or climb.  (R. 575–76.)  Dr. Cheng noted that Plaintiff had no limitations reaching, handling, or fingering, but could not predict Plaintiff's need for work absences; however, she noted that Plaintiff will require unscheduled restroom access during the workday.  (R. 575–77.)

In September 2018, Dr. Coyle completed a physical medical source statement on Plaintiff's behalf, which stated Plaintiff's diagnoses of memory loss, nausea, balance issues, and colitis.  (R. 697–700.)  Dr. Coyle opined that Plaintiff's joint swelling was temporary and that an endoscopy was positive for "Crohn's finings."  (R. 697.)  According to Dr. Coyle, Plaintiff's depression and anxiety affect her physical condition.  (*Id.*)  Dr. Coyle further opined that in a competitive work situation, Plaintiff can walk less than one block, sit for more than two hours at one time, and stand for ten minutes at one time.  (R. 698.)  Dr. Coyle found that Plaintiff requires a job which allows her to (i) shift positions at will from sitting, standing, or walking and (ii) take unscheduled breaks during the workday due to her muscle weakness, chronic fatigue, pain, and bowel movements.  (*Id.*)  In addition, Dr. Coyle also explained that because of her symptoms, Plaintiff has "significant limitations with reaching, handling, or fingering" things for a long period of time and may be "off task" for twenty-five percent or more of the workday.  (R. 699.)  Dr. Coyle ultimately opined that Plaintiff is "incapable of even 'low stress' work" and is likely to be absent more than four days per month.  (R. 700.)

## C.  Hearing Testimony

Plaintiff appeared and testified at an administrative hearing before ALJ Ayers on November 13, 2018.  (R. 31–53.)  Plaintiff testified that she stopped working because of her Crohn's disease, nausea, fatigue, abdominal pain, joint pain, and arthritis.  (R. 38–39.)  After Plaintiff stopped working, she experienced balance and memory problems.  (R. 39–40.)  Plaintiff

testified that she takes a variety of medications for her various symptoms.  (R. 39–41, 43.)  ALJ

Ayers also heard testimony from an impartial vocational expert, Rocco J. Meola ("VE Meola").

(R. 49–52.)  VE Meola testified that a hypothetical person with Plaintiff's vocational profile and

residual functioning capacity ("RFC") could no longer perform Plaintiff's prior work as a special

education teacher.  (R. 50.)  Nonetheless, VE Meola testified that someone with Plaintiff's

education, experience, age, and RFC limitations could perform other jobs in the national economy

including a mail sorter, microfilm mounter, or ticketer.  (R. 51.)

## II.   **LEGAL STANDARD**

### A.  Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the

Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the

ALJ's factual findings is limited to determining whether there is substantial evidence to support

those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted).  Thus,

substantial evidence is "less than a preponderance of the evidence, but 'more than a mere

scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the

Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'"  *Bailey*,

354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if

the factual record is adequately developed, "the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence." *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B.      The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous

work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five–step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to

work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85–28, 96–3p, 96–4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled.  20 C.F.R.  §§  404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96–8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§

404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.  **DISCUSSION**

### A.

On February 1, 2019, ALJ Ayers held that Plaintiff was not disabled from the alleged onset date through the date of decision.  (R. 12–25.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date.  (R. 17.)  At step two, the ALJ found that Plaintiff had severe impairments including depressive disorder, anxiety disorder, cervical stenosis, obesity, and inflammatory polyarthropathy.  (R. 18.)  Although Plaintiff was diagnosed with "spine disorder, enlarged thyroid with nodes of benign microcarcinoma, trace mitral regurgitation, anemia, mild tricuspid regurgitation, hypercholesterolemia, hypertension, umbilical hernia, MTHFR gene mutation, gallbladder cholecystitis, chronic fatigue, gastroesophageal reflux disease, and gastritis," the ALJ found that these impairments were non-severe because medical notes reflected either "management with conservative treatment," mild side effects, or no persistent complaints or complications.  (*Id.*)  In addition, while medical imaging

showed mild fatty infiltration of the liver, a small liver cyst, and a small hiatal hernia, examiners'

notes state that these findings were "not consistent with irritable bowel disease" and medical exams

revealed no distention, a nontender abdomen, and normal bowel sounds.  (*Id.*)  The ALJ also noted

that Plaintiff's nausea and vomiting resolved following menstruation, and pelvic pain persisted

only during ovulation.  (*Id.*)  Accordingly, ALJ Ayers found that Plaintiff's conditions were non-

severe because the evidence failed to support that they have "more than a minimal impact on the

[Plaintiff's] ability to work."  (*Id.*)

Moreover, ALJ Ayers considered Plaintiff's alleged Crohn's disease and fibromyalgia.

(*Id.*)  However, because Plaintiff provided no conclusive evidence of Crohn's disease, the ALJ

found no formal diagnosis, except an April 2018 reference when Plaintiff received treatment for

cramps and diarrhea with "scant" bleeding between regular bowel movements.  (R. 18, 641.)

Separately, because exam notes stated that Plaintiff "likely has underlying fibromyalgia" (R. 586),

and there was no evidence of tender point examinations, the ALJ concluded that fibromyalgia was

"not medically determinable."  (R. 18.)

At step three, ALJ Ayers determined that Plaintiff's impairments, individually and in

combination, did not "meet[] or medically equal[] the severity of one of the listed impairments in

20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  (*Id.*)

The ALJ considered Listing 5.06 for inflammatory bowel disease, Listing 14.09 for inflammatory

arthritis, and Listings 12.04 and 12.06 for mental impairments.  (R. 19–20.)  To satisfy Listing

5.06, which encompasses Crohn's disease and ulcerative colitis, Plaintiff would need to produce

an obstruction of stenotic areas in either the small intestine or colon which is confirmed by either

medical imaging or in surgery and requires hospitalization for either intestinal decompression or

surgery; moreover, obstruction of stenotic areas must occur on a minimum of two occasions that

are at least sixty days apart within six months.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.06.  ALJ Ayers found no evidence of adhesions in Plaintiff's small intestine or colon that were confirmed with medical imaging or surgery, nor did she require hospitalization as required under Listing 5.06. (R. 19.)

To satisfy Listing 14.09 for inflammatory arthritis, Plaintiff would need to show either: (a) "persistent deformity or inflammation" in at least "one major peripheral weight-bearing joint resulting in the inability to ambulate effectively" or in a "major peripheral joint in each upper extremity resulting in the inability to perform fine and gross movements effectively"; (b) inflammation or deformity in at least one major joint in the upper or lower extremity with (i) involvement of at least two "organs/body systems" including one system with a moderate severity level and (ii) at least two of the following: "severe fatigue, fever, malaise, or involuntary weight loss"; (c) ankylosing spondylitis or other spondyloarthropathies with specific features; or (d) "repeated manifestations of inflammatory arthritis" with at least two of the following: "severe fatigue, fever, malaise, or involuntary weight loss," plus limitations in either daily living activities, social functioning, or timely task completion due to deficient concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09.  ALJ Ayers found that the evidence failed to show inflammatory arthritis as defined above under the Listing.  (R. 19.)

ALJ Ayers also considered Listing 12.04 for depressive disorder and Listing 12.06 for anxiety disorder.  (R. 19–20.)  To satisfy Listing 12.04, Plaintiff had to prove that she met both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria.  *See* 20 C.F.R. 404, Subpt. P, App. 1 § 12.04.  The "paragraph B" criteria require at least one extreme or two marked limitations in any area of functioning, such as understanding, remembering, applying information, concentrating, interacting with others, or managing herself.  *See* 20 C.F.R. 404, Subpt. P, App. 1 §

14

12.02.B.  The "paragraph C" criteria require that the mental disorder be "serious and persistent,"

and supported by evidence of both medical treatment and marginal adjustment.  *See* 20 C.F.R. 404

Subpt. P, App. 1 § 12.02.C.  Here, the ALJ considered "paragraph B" criteria and determined that

Plaintiff did not have at least one extreme or two marked limitations.  (R. 20.)  In addition, the

ALJ found that "paragraph C" criteria were not met and noted no consultant or treating source

found that Plaintiff met a mental listing.  (*Id.*)  Accordingly, the ALJ concluded that Plaintiff's

impairments did not meet the severity of the listings.  (*Id.*)

Prior to steps four and five, the ALJ found that Plaintiff had the RFC to perform light work

as defined in 20 C.F.R. 404.1567(b), provided she "never climbs ladders, ropes, or scaffolds."[1]

(R. 20–21.)  ALJ Ayers further found that Plaintiff is limited in her frequent handling, fingering,

and feeling with the right hand.  (R. 20.)  Plaintiff can sit, stand, and walk for six hours, and she

can occasionally perform the following activities: climb ramps and stairs, balance, stoop, crouch,

and crawl.  (R. 20–21.)  Plaintiff is limited to carrying, lifting, pushing, and pulling twenty pounds

occasionally and can lift and carry ten pounds frequently.  (R. 20.)  Plaintiff can perform simple,

routine tasks and make simple work-related decisions.  (R. 21.)

ALJ Ayers concluded that Plaintiff failed to establish her claim of total disability.  (R. 25.)

Although the ALJ acknowledged that Plaintiff's alleged symptoms could reasonably result from

her "medically determinable impairments," he found that her statements regarding "the intensity,

persistence and limiting effects" of those symptoms were inconsistent with the medical evidence

as well as Plaintiff's own reports.  (R. 21–22.)  For example, notwithstanding Plaintiff's alleged

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

symptoms, her MRI, biopsies, EEG and chest x-rays yielded normal results. (R. 22.) In addition, Plaintiff never received or sought psychiatric treatment, and examinations revealed that she can follow the topic of conversation and maintains average intellectual functioning, fair judgment, and adequate concentration with mild memory issues. (*Id.*) ALJ Ayers gave great weight to Dr. Dover's detailed neurologic examination and opinion that Plaintiff did not have any cognitive impairment, which was consistent with the overall record. (*Id.*) The ALJ gave partial weight to consultative examiner Dr. Friedman, to the extent his findings were consistent with the medical evidence and noted that more moderate limitations were ultimately determined after giving Plaintiff "the benefit of the doubt" as to her alleged inability to concentrate from physical pain. (R. 22–23.) ALJ Ayers gave little weight to Dr. Cheng because although she opined that Plaintiff is able to perform low-stress work given her depression and anxiety, Dr. Cheng is not a psychiatric specialist. (R. 23.) Furthermore, Dr. Cheng failed to opine on Plaintiff's functional limitations and did not specify the length of time Plaintiff allegedly requires for laying down or taking breaks during workdays. (*Id.*) ALJ Ayers also gave little weight to Dr. Coyle's September 2018 opinion because it reflected Plaintiff's subjective complaints which were inconsistent with her examination notes. (*Id.*) Additionally, the ALJ gave little weight to Dr. Green and Dr. Fusman's RFC statements because they did not examine Plaintiff and made findings without the latest record evidence. (*Id.*)

At step four, ALJ Ayers found that Plaintiff was unable to perform her past relevant work as a special education teacher. (*Id.*) At step five, ALJ Ayers found that, based on the testimony of VE Meola, Plaintiff can perform other work that exists in significant numbers in the national economy such as mail sorter, microfilm mounter, and ticketer. (R. 24.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 25.)

B.

On appeal, Plaintiff seeks reversal and remand of the Commissioner's decision.  (D.E. 11 at 1.)  Plaintiff asserts that the ALJ did not properly (1) weigh medical opinion evidence; (2) consider Plaintiff's medication limitations in his RFC assessment; and (3) consider Plaintiff's impairments in combination.  (D.E. 11 at 18–28.)  This Court considers the arguments in turn and finds them unpersuasive.

First, Plaintiff argues that the ALJ improperly weighed medical opinion evidence.  (D.E. 11 at 18–24.)  Specifically, Plaintiff contends that the ALJ erred by giving "little weight" to Dr. Cheng's 2018 Crohn's and Colitis Medical Source Statement and Dr. Coyle's 2018 Physical Medical Source Statement without adequate reasoning.  (*Id.*)  The ALJ may reject a treating physician's opinion if it is "not well-supported by medically acceptable clinical and laboratory diagnostic techniques," or is "inconsistent with other substantial evidence of record," provided that the ALJ explains his reasoning.  *Ramos v. Colvin*, No. 14-3971, 2016 WL 1270759, at *5 (D.N.J. Mar. 31, 2016) (internal quotation marks omitted); *accord Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(c)(3)–(5), 416.927(c)(3)–(5) (setting forth the factors in deciding what weight to give a medical opinion, including supportability, consistency, and specialization of the medical source).

ALJ Ayers provided adequate reasoning for his assessment of Dr. Cheng's 2018 Crohn's and Colitis Medical Source Statement because she failed to opine on Plaintiff's functional limitations.  (R. 23.)  For example, Dr. Cheng stated that she was "unsure" of Plaintiff's ability to lift, carry, stand, walk, sit, or shift positions.  (R. 575–76.)  Similarly, Dr. Cheng was "unsure" about the expected length of time Plaintiff's impairments will persist, her expected amount of "off task" time during a workday, and the number of work absences she may require per month.  (R.

574–77.)  Although Dr. Cheng opined that Plaintiff may need time to lie down and will require restroom breaks during the workday, she was unable to assess how long or often Plaintiff would need such breaks.[2]  (R. 575.)  These reasons were sufficient to discredit Dr. Cheng's 2018 medical opinion.  *See, e.g.*, *Temple v. Saul*, No. 19-19243, 2020 WL 5627001, at *6 (D.N.J. Aug. 18, 2020) (finding that an ALJ properly discounted a medical opinion where the doctor indicated plaintiff was limited "in her ability to lift, carry, stand, walk, sit, push, and pull" but failed to specify the extent of those purported limitations "despite being asked to do so"); *see also Tiano v. Comm'r of Soc. Sec.*, No. 18-14620, 2020 WL 4882538, at *8 (D.N.J. Aug. 19, 2020) (concluding that the ALJ appropriately assigned "little weight" to medical opinion evidence where letters from plaintiff's physicians did not "assess[] any specific functional limitations"); *Gonzalez v. Comm'r of Soc. Sec.*, No. 14-6441, 2015 WL 9581750, at *6 (D.N.J. Dec. 29, 2015) (upholding an ALJ's weight assessment of a medical opinion where he found "no probative evidentiary value" in a doctor's "scratch sheet" because his finding of "extreme functional limitations" were not "explained by reference to objective evidence").

Similarly, the ALJ's conclusion as to Dr. Coyle's 2018 Physical Medical Source Statement is supported by the record.  Here, ALJ Ayers found that Dr. Coyle's opinion was inconsistent with her own notes from September 2018 which reflected a normal physical examination.  (R. 23, 808–09 (examination notes finding mild depressive symptoms, no tenderness of Plaintiff's abdomen, no abdominal pain, "normal spine and peripheral joints without swelling or tenderness," and no limitations as to Plaintiff's range of motion).)  Rather, the ALJ concluded that Dr. Coyle's medical opinion appeared to hinge on Plaintiff's own personal reports.  (*Id.*)  This inconsistency is sufficient to support the ALJ's determination affording Dr. Coyle's opinion little weight.  *See, e.g.*,

---

[2] Furthermore, the ALJ noted that Dr. Cheng is not a psychiatrist, yet her opinion found Plaintiff capable of low-stress work and stated that Plaintiff's depression and anxiety affect physical her condition.  (R. 575.)

*Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) (noting "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion"); *Conover v. Colvin*, No. 13-6413, 2014 WL 7012502, at *16 (D.N.J. Dec. 12, 2014) (holding that the ALJ afforded proper weight to a physician's opinion where his actual treatment records conflicted with his conclusion of total disability and finding that the physician "must have relied heavily on [p]laintiff's own subjective statements to guide his opinion"); *Sanborn v. Colvin*, No. 13-224, 2014 WL 3900878, at *12 (E.D. Pa. Aug. 11, 2014) (finding the ALJ properly rejected a physician's opinions because the physician "relied upon plaintiff's subjective complaints, rather than medical findings, as the basis for his proposed limitations"). Accordingly, the ALJ did not err in affording little weight to Dr. Cheng and Dr. Coyle's medical opinions from 2018.[3]

## C.

Next, Plaintiff contends that ALJ Ayers conducted an incomplete and inaccurate RFC assessment because he did not consider limitations from her alleged Crohn's disease and fibromyalgia, including the medications she takes to curb her symptoms.  (D.E. 11 at 24–27.) Notably, allegations of disabling limitations may be discounted when the ALJ finds that the record evidence, including objective medical evidence, treatment records, statements about daily activities, or other relevant evidence, fails to support those allegations.  *See* 20 C.F.R. § 404.1529(c)(3).  Moreover, "[t]he presence of evidence in the record that supports a contrary

---

[3] Moreover, Defendant here maintains that the statement forms filled out by Dr. Cheng and Dr. Coyle in 2018 were entitled to little weight because they were "check-the-box" forms.  (*See* D.E. 12 at 11.)  Notably, such checklist statements "which require only that the completing physician 'check a box or fill in a blank,' rather than provide a substantive basis for the conclusions stated, are considered 'weak evidence at best' in the context of a disability analysis."  *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)); *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) ("the ALJ was entitled to accord lesser weight to [the physician's] opinion because it was provided in a check-box form and he did not provide any reasons in support of his various conclusions"); *accord Drejka v. Comm'r of Soc. Sec.*, 61 F. App'x 778, 782 (3d Cir. 2003).

conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) (citation omitted).

The ALJ's findings are supported by the record and Plaintiff does not provide any evidence to refute the conclusion that she has the RFC to perform light work. In assessing Plaintiff's RFC, ALJ Ayers considered her alleged symptoms and limitations, including her need for restroom access, and found them consistent with her diagnoses of "depression, anxiety, cervical stenosis . . . obesity, and inflammatory polyarthropathy." (R. 21.) However, the ALJ ultimately found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not substantiated by the objective medical evidence and were inconsistent with Plaintiff's own reports. (R. 21–22.) For example, despite Plaintiff's alleged symptoms and limitations, she can prepare simple meals, travel short distances independently, transport her children to activities, perform basic household chores, and socialize with friends. (R. 22.) The ALJ also found that Plaintiff's reported ability to monitor her children's homeschooling was inconsistent with the alleged severity of her psychological impairments. (*Id.*) Furthermore, the ALJ considered Plaintiff's alleged impairments as stated in various visitation and treatment records but found that clinical findings revealed normal results and that Plaintiff failed to pursue psychiatric treatment. (*Id.*) Overall, the ALJ's RFC assessment is supported by Plaintiff's reported activities of daily living, her lack of aggressive treatment, and the absence of objective medical findings consistent with Plaintiff's alleged severity of symptoms. (*See* R. 21–23); *see Salles*, 229 F. App'x at 147 (noting that the ALJ need not accept a claimant's alleged limitations where the record lacks "medical evidence that her symptoms impaired her ability to work"); *Prokopick*, 272 F. App'x at 199 ("[A]n ALJ may not base a finding of disability solely on a claimant's statements about

disabling pain; the ALJ must evaluate 'the extent to which [a claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence'" (quoting 20 C.F.R. § 404.1529(a))).

Similarly, although Plaintiff argues that the ALJ failed to consider certain medication limitations, she does not point to any specific medications or alleged limitations that were overlooked, let alone any medical evidence in support of her contention.  (*See generally* D.E. 11); *see also Grandillo v. Barnhart*, 105 F. App'x 415, 419 (3d Cir. 2004) (holding that where a claimant does "not cite[] to any medical evidence demonstrating that she suffered adverse side effects from her medication . . . . her own conclusory statements [can] not establish a sufficient ongoing struggle with any side-effects to undermine the ALJ's determination").  Moreover, the analysis above does not change to the extent Plaintiff argues that the ALJ ignored or improperly assessed her limitations because he incorrectly excluded Crohn's disease and fibromyalgia from Plaintiff's list of severe impairments.  *See* S*alles*, 229 F. App'x at 148 ("A lack of evidentiary support in the medical record" remains "a legitimate reason for excluding claimed limitations from the RFC.").  Other than Plaintiff's need for restroom access, Plaintiff does not describe any additional limitations that stem from her purported Crohn's disease or fibromyalgia that the ALJ allegedly declined to consider.[4]  (*See generally* D.E. 11; D.E. 13.)  Thus, the ALJ's RFC assessment is adequately supported by the medical record.  *See e.g.*, *Aeling v. Saul*, No. 18-824, 2020 WL 7768407, at *16 (D.N.J. Dec. 30, 2020) ("[T]he ALJ's failure to consider [p]laintiff's

---

[4] In any event, the ALJ's conclusion that Crohn's disease was inconclusive (R. 18) is adequately supported by the medical record.  (*See* R. 544 (noting "possible Crohn's" disease); R. 574 (stating "abdominal pain possibly due to Crohn's" disease); R. 611 (finding "questionable inflammatory bowel disease, but no conclusive evidence of Crohn's or UC").)  In addition, the ALJ's finding that fibromyalgia was not a medically determinable impairment is supported by a lack of tender point examinations and laboratory findings.  (*See* R. 18.)  Moreover, Dr. Wu opined in February 2017 that Plaintiff's diagnosis consisted of "inflammatory arthritis of unclear etiology." (R. 543.)  Nor does Plaintiff point to evidence in support of her contention that she satisfies the "section B" criteria for fibromyalgia under SSR 12-2p.  (*See* D.E. 11 at 26.)

alleged drowsiness or to incorporate any—otherwise unidentified—related functional limitations does not undermine the ALJ's RFC determination.").

D.

Lastly, Plaintiff argues that ALJ Ayers failed to assess her psychiatric and physical impairments in combination. (D.E. 11 at 27–28.) At step three, an ALJ must consider whether a claimant's impairments individually or in combination equal any of the listed impairments. *Nova v. Comm'r of Soc. Sec.*, No. 15-7728, 2017 WL 1365005, at *6 (D.N.J. Apr. 10, 2017). An ALJ may fulfill his obligation to consider a claimant's impairments in combination if he "explicitly indicates that he has done so and there is 'no reason not to believe him.'" *Granados v. Comm'r of Soc. Sec.*, No. 13-781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008)); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (noting that the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis"). When "read as a whole" the ALJ's decision need only include a "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

Here, the ALJ began step three by stating that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 18.) Again, at step three, ALJ Ayers reiterated that "[t]he severity of the [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal" the listings criteria. (R. 19.) ALJ Ayers thoroughly evaluated Plaintiff's impairments against the listing criteria by assessing the record evidence. (R. 18–19.) In doing so, he provided statements concerning the combined effect of Plaintiff's impairments. (*Id.*) Thus, this Court finds

22

no reason to discredit the ALJ's stated considerations.[5]   *See, e.g.*, *Vega v. Comm'r of Soc. Sec.*, No. 19-11399, 2021 WL 268174, at *5 (D.N.J. Jan. 27, 2021); *Samperi v. Berryhill*, No. 18-9382, 2019 WL 1418131, at *8 (D.N.J. Mar. 29, 2019); *Granados*, 2014 WL 60054, at *9.

## IV.   **CONCLUSION**

For the foregoing reasons, this Court finds that ALJ Ayers' factual findings were supported by substantial credible evidence in the record and his legal determinations were correct.   Thus, the Commissioner's determination is **AFFIRMED**.   An appropriate order follows.

---

[5] In addition, a claimant "must point to evidence on the record showing that h[er] impairment, singularly or in combination, would meet or equal specific listings, and that such evidence would change the ALJ's decision." *Villalobos v. Comm'r of Soc. Sec.*, No. 18-15614, 2020 WL 64543, at *6 (D.N.J. Jan. 7, 2020) (citing *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (rejecting plaintiff's argument that "certain impairments were not properly compared, separately and in combination, to the listings," when he did "not identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not," and which "offers no explanation of how further analysis [by the ALJ] could have affected the outcome of his disability claim")).   Here, Plaintiff failed to identify evidence reflecting that, in combination, her psychical and psychiatric impairments met or medically equaled a listed impairment to warrant a different outcome.   (*See generally* D.E. 11; D.E. 13.)   Additionally, for the reasons stated above, the ALJ properly found Crohn's disease and fibromyalgia to be not medically determinable and properly discredited Dr. Cheng and Dr. Coyle's 2018 medical opinion statements.